No. 121,618

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREA MARIE DOMINGUEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court exercises unlimited review when interpreting a sentencing statute.

2.

Generally, a statutory change operates prospectively except (1) when its language clearly shows that the Legislature intended retroactive application, or (2) when the statutory change is merely procedural or remedial in nature and does not prejudicially affect a party's substantive rights.

3.

The 2019 amendment to the intermediate sanctioning scheme at K.S.A. 22-3716 does not apply retroactively to probation violators whose crimes were committed before the effective date of the amendment.

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed August 28, 2020. Reversed and remanded with directions.

1

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

MALONE, J.:  Andrea Marie Dominguez appeals the district court's decision revoking her probation and ordering her to serve her original prison sentence. When Dominguez committed her crimes, Kansas law provided a probation violator with a two-tier intermediate sanctioning scheme before the district court could revoke probation and execute the original sentence:  first, the district court needed to impose either a 2-day or 3-day jail sanction and second, the district court needed to impose either a 120-day or 180-day prison sanction. In 2019, the Kansas Legislature amended the intermediate sanctioning scheme and removed the second-tier prison sanction. This amendment became effective a few days before Dominguez' probation violation hearing.

Relying on the amendment, the district court revoked Dominguez' probation and ordered her to serve her original sentence, after finding that she had violated the terms of her probation and finding that she had received an intermediate three-day jail sanction for a prior violation. On appeal, Dominguez claims the district court erred in applying the 2019 amendment to her case. We agree with Dominguez and hold the 2019 amendment to the intermediate sanctioning scheme does not apply retroactively to probation violators whose crimes were committed before the effective date of the amendment.

FACTS AND PROCEDURAL HISTORY

The State charged Dominguez with two counts of trafficking in contraband in a correctional institution and one count of criminal possession of a weapon based on

conduct occurring in April 2017. The State later dismissed one count of trafficking in contraband in a correctional facility and Dominguez pled guilty to the other charges.

Dominguez' criminal history placed her in a border box on the sentencing grid for the charge of trafficking in contraband in a correctional facility and presumptive probation for the criminal possession of a firearm charge. At the sentencing hearing on August 23, 2017, the district court made the required border box findings and sentenced Dominguez to 24 months' imprisonment but granted her probation for 24 months to be supervised by community corrections.

On October 31, 2017, the district court issued a warrant alleging Dominguez violated the terms of her probation by leaving drug and alcohol treatment and by failing to provide her supervision officer with her new address. The district court held a probation violation hearing and she admitted to the violations. The district court found Dominguez had violated her probation and imposed a three-day quick dip jail sanction.

On September 24, 2018, the district court issued a warrant alleging Dominguez again violated the terms of her probation by (1) submitting a urine sample that tested positive for methamphetamine; (2) failing to report to her supervision officer on September 7, 2018; (3) failing to report to her supervision officer on September 13, 2018; (4) failing to attend drug and alcohol treatment; (5) failing to complete community service; and (6) failing to make payments toward court costs and program fees. Dominguez was located and served with the warrant the following June.

On July 10, 2019, the district court held a probation violation hearing. Dominguez admitted to all six violations. The State argued the district court should impose Dominguez' original sentence based on the July 1, 2019 amendment to the intermediate sanctioning scheme, which removed the requirement for a 120-day or a 180-day sanction before the court could revoke an offender's probation. The district court agreed and

3

revoked Dominguez' probation, finding she had "gone through the intermediate sanction track" based on her prior three-day quick dip jail sanction. Dominguez timely appeals.

ANALYSIS

Dominguez argues, for the first time on appeal, that the district court erred in revoking her probation because it impermissibly applied the 2019 amendment to the intermediate sanctioning scheme to her case. She argues that the district court should have applied either the law in effect at the time of her probation violations in September 2018 or the law in effect when she committed her crimes of conviction in April 2017. Under either controlling date, Dominguez argues that the district court had to impose either a 120-day or 180-day intermediate prison sanction before revoking her probation.

The State argues the district court correctly applied the 2019 amendment to Dominguez' case because the Legislature meant for the amendment to apply retroactively. In support, the State cites K.S.A. 2019 Supp. 22-3716(c)(10) (formerly K.S.A. 2018 Supp. 22-3716[c][12]), which states the sanctions in subsection (c) shall apply to any probation violation occurring on or after July 1, 2013. The State also relies on this court's ruling in *State v. Tearney*, 57 Kan. App. 2d 601, 606-08, 457 P.3d 178 (2019) (finding K.S.A. 2017 Supp. 22-3716[c][12] allowed retroactive application of the dispositional departure exception added to the sanctioning scheme in a 2017 amendment).

This court reviews the propriety of the sanction for a probation violation imposed by the district court for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 126-27, 431 P.3d 850 (2018). Dominguez argues the district court made an error of law by applying the wrong version

4

of the intermediate sanctioning statute. When interpreting a sentencing statute, this court exercises unlimited review. *Coleman*, 311 Kan. at 334-35.

Dominguez did not make her retroactivity argument in district court. But we agree with her that we can consider the argument for the first time on appeal because it involves a question of law arising on proved or admitted facts and it is finally determinative of the case on appeal. See *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019).

The procedure for revoking an offender's probation is governed by K.S.A. 2019 Supp. 22-3716. That statute requires the district court to impose intermediate sanctions before it can revoke an offender's probation, but the number and type of intermediate sanctions has recently changed. See L. 2019, ch. 59, § 10. Before July 1, 2019, the district court had to impose either a 2-day or 3-day jail sanction and then a 120-day or a 180-day prison sanction before revoking a defendant's probation. See K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D). But effective July 1, 2019, the Legislature removed the 120-day and 180-day prison sanction from the intermediate sanctioning scheme. See K.S.A. 2019 Supp. 22-3716(c). Thus, under the 2019 amendment, the district court may now revoke an offender's probation after the offender has received at least one two-day or three-day jail sanction. See K.S.A. 2019 Supp. 22-3716(c)(1)(C).

The sole issue is whether the 2019 amendment to the intermediate sanctioning scheme applied retroactively to Dominguez' case. Generally, a statutory change operates prospectively except (1) when its language clearly shows that the Legislature intended retroactive application, or (2) when the statutory change is merely procedural or remedial in nature and does not prejudicially affect a party's substantive rights. See *White v. State*, 308 Kan. 491, 499, 421 P.3d 718 (2018). Even procedural rules cannot be applied retroactively if they eradicate a vested right. See 308 Kan. at 499. Courts consider three factors to determine whether a statutory amendment violates a party's vested rights:  (1) the nature of the rights at stake (e.g., procedural, substantive, remedial); (2) how the

rights were affected (e.g., were the rights partially or completely abolished by the legislation and was any substantive remedy provided); and (3) the nature and strength of the public interest furthered by the legislation. See 308 Kan. at 499.

The State argues that the district court correctly applied the 2019 amendment to the probation revocation statute because the Legislature intended retroactive application of the amendment. In support, the State cites K.S.A. 2019 Supp. 22-3716(c)(10) (formerly K.S.A. 2018 Supp. 22-3716[c][12]), which states that "[t]he violation sanctions provided in this subsection shall apply to any [probation] violation . . . occurring on and after July 1, 2013, regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced." But this language was enacted by the Legislature in 2014. See L. 2014, ch. 102, § 8. The Legislature did not make clear with any express language whether the 2019 amendment removing the 120-day and the 180-day prison sanction from the intermediate sanctioning scheme should apply retroactively to cases already pending when the amendment became effective.

The question then becomes whether the language in K.S.A. 2019 Supp. 22-3716(c)(10) serves as a clear indication that the Legislature intended the 2019 amendment to operate retroactively. In her reply brief, Dominguez argues that our Supreme Court's recent decision in *Coleman* answers that question. In that case, the district court revoked the defendant's probation without exhausting the intermediate sanctions based on a statutory exception that allowed the court to do so when the probation was originally granted as a result of a dispositional departure. See K.S.A. 2017 Supp. 22-3716(c)(9)(B). The dispositional departure exception became effective on July 1, 2017. See L. 2017, ch. 92, § 8. Our Supreme Court determined that the dispositional departure exception could not be applied retroactively despite the language in K.S.A. 2017 Supp. 22-3716(c)(12). 311 Kan. at 337. The *Coleman* court reasoned:

6

"'Generally, a statute operates prospectively unless there is clear language indicating the legislature intended it to operate retrospectively.' When it was adopted, the language of (c)(12) operated as an effective date provision for the graduated sanctions statutory amendment enacted in 2013. Subsection (c)(12) did not express an intent for subsection (c)(9)(B) to operate retrospectively because (c)(9)(B) did not then exist. Subsection (c)(9)(B) was not adopted until July 1, 2017. Thus, (c)(12) is an effective date provision which cannot function as 'clear language indicating the legislature intended' (c)(9)(B) to operate retrospectively. [Citations omitted.]" 311 Kan. at 337.

Although *Coleman* addressed the retroactivity of a different amendment to the probation revocation statute, the same reasoning applies here. The retroactivity language now found in K.S.A. 2019 Supp. 22-3716(c)(10) was enacted and inserted into the statute in 2014 to serve as an effective date for the new intermediate sanctioning scheme that had been enacted in 2013. Because the 2019 version of the sanctioning scheme did not exist at the time the language in subsection (c)(10) was enacted, the language in subsection (c)(10) cannot serve as a clear indication that the Legislature intended the 2019 amendment to operate retroactively. See *State v. Churchill*, No. 118,821, 2019 WL 1087352, at *4 (Kan. App. 2019) (unpublished opinion) (holding that 2016 amendment to juvenile decay rules in K.S.A. 21-6810 did not apply retroactively despite express language in the statute that prior amendments were intended to apply retroactively).

The *Coleman* court went on to hold that the dispositional departure exception at K.S.A. 2017 Supp. 22-3716(c)(9)(B) "applies only to probationers whose *offenses or crimes of conviction* occurred on or after July 1, 2017." (Emphasis added.) 311 Kan. at 337. Based on this holding, this court's ruling in *Tearney* that K.S.A. 2017 Supp. 22-3716(c)(12) permitted the retroactive application of the dispositional departure exception is no longer good law, so the State's reliance on *Tearney* is misplaced. In fact, our Supreme Court granted a petition for review in *Tearney* and remanded the case to the Court of Appeals for reconsideration in light of *Coleman*.

7

Had the Kansas Legislature intended for the 2019 amendment to the intermediate sanctioning scheme to apply retroactively to pending cases, the Legislature could have included language with the amendment to clarify that the 2019 amendment in particular should be construed and applied retroactively. See, e.g., K.S.A. 2019 Supp. 21-6810(e) ("The amendments made to this section by section 1 of chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively."). The Legislature did not express this specific intent. Thus, we conclude there is no statutory language that clearly shows that the Legislature intended retroactive application of the 2019 amendment to the intermediate sanctioning scheme.

A statutory amendment can also be applied retroactively to pending cases when it is merely procedural or remedial in nature and does not prejudicially affect a party's substantive rights. See *White*, 308 Kan. at 499. Arguably, the 2019 amendment to the intermediate sanctioning scheme can be considered procedural or remedial in nature. But even if this is so, we find that the 2019 amendment prejudicially affected Dominguez' substantive rights and cannot be applied retroactively to her pending case for that reason.

Before the amendment, the district court needed to impose both a 2-day or 3-day jail sanction and an additional 120-day or 180-day prison sanction before the court could revoke Dominguez' probation. Dominguez had to commit at least two prior probation violations before the district court could revoke her probation, unless the court relied on some other statutory ground to circumvent the intermediate sanctions. See *State v. Clapp*, 308 Kan. 976, Syl. ¶¶ 2-3, 425 P.3d 605 (2018). After the amendment, the district court could revoke Dominguez' probation after she committed only one prior violation that led to a two-day or three-day jail sanction. Thus, the State's path to seeking a probation revocation in Dominguez' case has been made easier as a result of the 2019 amendment.

This court has addressed in unpublished opinions the exact question posed here— whether the 2019 amendment to the probation revocation statute removing the 120-day

8

and 180-day intermediate sanctions can be applied to cases that were pending when the amendment became effective. In *State v. Ratliff*, No. 121,800, 2020 WL 2097488 (Kan. App. 2020) (unpublished opinion), the defendant challenged the district court's decision to revoke his probation under the 2019 amendment which became effective after he committed his violations. The *Ratliff* panel found "the 2019 amendment eliminating the 120-and 180-day prison sanctions has no express retroactivity language. So as in *Coleman*, it applies prospectively only to probationers who committed their underlying crimes after July 1, 2019." *Ratliff*, 2020 WL 2097488, at *2. This court found that the district court should have imposed a 120-day or 180-day prison sanction before revoking the defendant's probation and remanded the case for a new dispositional hearing under the correct version of the intermediate sanctioning statute. 2020 WL 2097488, at *2; see *State v. Ingram*, No. 121,819, 2020 WL 4035077, at *2 (Kan. App. 2020) (unpublished opinion) (finding the 2019 amendment did not apply retroactively and the statute in effect on the date the probationer committed the crime of conviction controls).

Following the reasoning in *Coleman* and finding *Ratliff* and *Ingram* persuasive, we hold the 2019 amendment to the intermediate sanctioning scheme at K.S.A. 22-3716 does not apply retroactively to probation violators whose crimes were committed before the effective date of the amendment. Because Dominguez committed her crimes in April 2017, the district court must apply the intermediate sanctioning scheme in effect at that time. See K.S.A. 2016 Supp. 22-3716(c). Thus, the district court erred in finding that Dominguez had exhausted the intermediate sanctioning scheme after serving only one three-day quick dip jail sanction. On remand, the district court must apply the intermediate sanctioning scheme in effect in April 2017, and the court must impose either a 120-day or 180-day prison sanction before revoking Dominguez' probation, unless the court finds a valid statutory ground to circumvent further intermediate sanctions.

Reversed and remanded for a new dispositional hearing.